IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PHYLLIS WISE,                           CASE NO. 2:07-cv-046
                                               CRIM. NO. 2:05-cr-080(2)
                                               JUDGE MARBLEY
          Petitioner,                MAGISTRATE JUDGE KEMP

v.

UNITED STATES OF AMERICA,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant motion, respondent's return of writ, and the exhibits of the parties. Petitioner's request to proceed *in forma pauperis,* Doc. No. 64, is **DENIED** as moot. No filing fee is required in §2255 proceedings.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for the appointment of counsel, Doc. No. 76, is **DENIED**. Petitioner's request for a certificate of appealability, Doc. No. 77, likewise is **DENIED**, without prejudice to renewal as premature. No final judgment has yet been issued in this case.

## PROCEDURAL HISTORY

On March 29, 2005, petitioner was indicted, along with co-defendant Richard Wise, on conspiracy to commit bank robbery, in violation of 18 U.S.C. §371 and §2113(a), and unlawfully transporting in interstate commerce a stolen motor vehicle, in violation of 18 U.S.C. §2312 and §2. Doc. No. 3. On October 28, 2005, while represented by counsel and pursuant to the terms of her

1

negotiated guilty plea, petitioner pleaded guilty to count one of the indictment, *i.e.*, conspiracy to commit bank robbery.  On January 27, 2006, the Court sentenced her to sixty months of imprisonment to be followed by a term of three years supervised release.  Petitioner did not appeal.

On January 22, 2007, petitioner filed the instant *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255.  She asserts the following claims:

> 1. Fast and speedy trial request violated.
>
> 2. Ineffective assistance of counsel.
>
> 3. Violence threat dismissed after defendant sentenced benefitting co-defendant only.
>
> 4. Franklin County Jail III had no available access or opportunity to consult law materials to help self.

It is the position of the respondent that all of the foregoing claims are without merit.

## SPEEDY TRIAL

In claim one, petitioner appears to contend that she was denied her right to a speedy trial due to a violation of the Interstate Agreement on Detainers Act (hereinafter "IAD") because she was not brought to trial within 180 days of her request for a speedy disposition of the charges.[1] *See Exhibits*

---

[1]

> Title 18 U.S.C.App. § 2 contains the full text of the IAD.... Article III of the IAD provides in relevant part as follows:
>
> "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: *Provided,* That, for good cause shown in open

*to Return of Writ.* This claim fails on several grounds.

First, claims under the IAD are not ordinarily cognizable in §2255 proceedings. *Mars v. United States*, 615 F.2d 704, 707 (6th Cir. 1980)(citations omitted); *Durham v. Burt*, 2006 WL 2620208 (E.D. Michigan September 12, 2006), citing *Browning v. Foltz,* 837 F.2d 276, 283 (6th Cir.1988); *Metheny v. Hamby,* 835 F.2d 672, 675 (6th Cir.1987). Further, the record fails to reflect any actual prejudice to petitioner from the alleged violation. *Mars v. United States, supra*.

---

court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based."

Article V(c) of the IAD provides, in relevant part:

"[I]n the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III ... hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

*Fex v. Michigan*, 507 U.S. 43, 45 n.1 (1993).

Petitioner agreed to her co-defendants' June 2005 request for a continuance of trial of at least ninety days. *See New York v. Hill*, 528 U.S. 110, 115 (2000); Doc. No. 24. Additionally, she failed to raise the issue prior to entry of her guilty plea. *See id.*, at 707, citing *United States v. Eaddy*, 595 F.2d 341, 346 (6th Cir. 1979), thus waiving her right to raise this claim here.

> Those circuits considering the issue have held that claims of IAD violations are not jurisdictional; and, therefore, are waived by the entry of an unconditional guilty plea. *Baxter v. United States,* 966 F.2d 387, 389 (8th Cir.1992) ("By pleading guilty, Baxter waived his right to assert IADA violations."); *United States v. Fulford,* 825 F.2d 3, 10 (3rd Cir.1987) ( "entry of a guilty plea acts as a waiver of the provisions of the IADA"); *Kowalak v. United States,* 645 F.2d 534, 537 (6th Cir.1981) (IAD rights are non-jurisdictional and waivable by a valid guilty plea); *Camp,* 587 F.2d at 399-400 (rejecting defendant's argument that the IAD is jurisdictional).

*United States v. Paige*, 332 F.Supp.2d 467, 471 (D.R.I. 2004).

Thus, claim one is without merit.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In claims two and three, petitioner asserts that she was denied the effective assistance of counsel because her attorney failed to argue possible mitigating factors, failed to dispute the PreSentence Investigation Report, and failed to request that twenty-one months she had already served on state charges be applied to her sentence in this case. Petitioner also complains that the Court did not sentence her on the same date as her co-defendant, and the "violence threat [was] dismissed after [petitioner] sentenced, benefitting co-defendant only." *Petition,* at 5. None of the foregoing allegations are meritorious.

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411

4

U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 59, (1985); *Sparks v. Sowders,* 852 F.2d 882, 884 (6 Cir.1988). In order to obtain relief, a prisoner who is challenging the entry of his guilty plea on the basis of counsel ineffectiveness must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884. The second, or "prejudice" requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884.  Petitioner cannot meet this standard here.

At the time of her guilty plea, petitioner stated she had discussed the case and her possible defenses with her attorney, and that she wanted to plead guilty. *Transcript, Guilty Plea*, October 28, 2005, at 4-5; 10. She was satisfied with her attorney. *Id.*, at 11. The Court advised her of the elements of the offense to which she was pleading guilty, and of the maximum penalty for the offense. *Id.*, at 12-13; 14-16. The prosecutor summarized the terms of the plea agreement, and petitioner indicated that she agreed with those terms. *Id.*, at 20-25. No other promises or threats had been made to induce her to plead guilty. *Id.*, at 25-27. The Court advised petitioner of all of the rights she was waiving by virtue of her guilty plea. *Id.*, at 16-20. At all times petitioner indicated that she understood. Agent Drew McConaghy summarized the facts as follows:

> On September 22, 2003, at approximately 12:54 pm, the Union Savings Bank, 1330 Morse Road, Columbus, Ohio was robbed by two African-American males. Suspect No. 1 vaulted the counter and

5

began removing money from the teller drawers. Suspect No. 2 stood by the front door and directed customers to stay still.

Both suspects fled the bank on foot running north. A few minutes later a customer entered the bank with a black hat that one of the robbers had dropped as he fled from the robbery. The hat was turned over to the Columbus police as evidence. The hat was sent to BCII and a DNA sample was identified. The DNA sample was placed into CODIS, combined DNA index system, a database for DNA identification. There was no DNA match at that time. The total loss to the Union Savings Bank was $2,707.00.

On October 25, 2003, at approximately 11:30 am, Richard and Phyllis Wise walked on to the Red Jones used car lot located at 46 North River Road, Wheeling, West Virginia and advised the owner Lambert T. Jones that they were looking for a car. Jones directed them towards a 1986 red Ford Thunderbird which the couple requested to take for a test drive. Jones gave them the keys and they took the car from the lot for a test drive.

Approximately 25 minutes later the couple had not returned the car to the lot and Jones feared that the car had been stolen. Jones then called the Wheeling police department and reported the car as stolen.

Approximately 30 minutes later, at approximately 12:45 pm, the Belmont National Bank, Ohio Valley Mall, Belmont County, St. Clairsville, Ohio was robbed by two African-American males. They both entered the bank and suspect No. 1 vaulted the counter and directed the teller to remove the large bills from both the top and bottom drawers of several teller stations. Suspect 2, described as a tall skinny African-American male, remained in the lobby area and directed customers to stand still. Both men wore multicolored jogging suits and sneakers.

When all the drawers had been cleared of the larger bills, both robbers fled the bank and were seen by a witness in the parking lot getting into the same 1986 red Ford Thunderbird bearing West Virginia dealer license plates which had been transported across state lines and driven off the lot by the Wises. The total loss to the bank was $52,648.24.

6

On October 26, 2003, the stolen 1986 red Ford Thunderbird was recovered at the Toys-R-Us parking lot approximately 400 yards away from the scene of the robbery. A black mask/hat was recovered as evidence by the Belmont County sheriff's department from the pavement next to the driver's door.

The mask/hat was sent to the Bureau of Criminal Identification and Investigation and a DNA sample was recovered. The sample from the mask/hat was placed into CODIS and a match was made to the black hat that was recovered from the September 22, 2003, Union Savings Bank robbery, Columbus, Ohio, described above.

These samples were later compared to a DNA sample directly obtained from Richard Wise. All three DNA samples were determined to have come from Richard Wise which confirmed that Richard Wise participated in the robbery of the Union Savings Bank, 1330 Morse Road, Columbus, Ohio on September 22, 2003.

On March 13, 2004, Phyllis Wise and a male later identified as Richard Wise walked on to the M&M auto sales lot, 1129 Weber Road, Columbus, Ohio and requested to test drive two different cars. Phyllis Wise provided the lot manager Terry Thomas with her Ohio driver's license identifying her as Delores Wise which Thomas recorded on a notepad before the cars were driven off the lot.

Richard Wise drove the first vehicle, a blue ford Taurus, and Phyllis test drove the second vehicle. Phyllis returned the vehicle that she test drove and retrieved her Ohio driver's license. The blue ford Taurus was not returned and on March 15, 2004 it was reported stolen.

On March 16, 2004, the Delaware County Bank, 10149 Brewster Lane, Powell, Ohio was robbed by two African American males. Both men wore pantyhose stockings covering their faces and wearing toboggan-style winter hats over top of the stocking hats. Suspect No. 1 vaulted over the counter and took control of the tellers behind the teller line.

Suspect 2 corralled the remaining bank employees to the lobby area and held them in place by implying that he had a gun in his pocket.

> Suspect No 1 collected the money from the vault and teller drawers, vaulted back over the counter, and he and the other robber fled the bank on foot.
>
> A customer in the parking lot area observed the robbers exit the bank and enter a waiting blue Ford Taurus. A short time later the abandoned blue Ford Taurus was located at 3976 West Powell Road, Powell, Ohio. It was the same blue Ford Taurus driven by Richard Wise and reported stolen from M&M Auto Sales. The loss to the bank was $42,000.
>
> The funds contained in the three aforementioned banks were insured by the FDIC and all the alleged conduct occurred in part in the Southern District of Ohio.

*Id.*, at 27-31. Petitioner stated that the foregoing facts were true and admitted her guilt. *Id.*, at 31-32.

Pursuant to the terms of her guilty plea, count three of the indictment, which charged petitioner with interstate transportation of a stolen vehicle, was dismissed, thereby substantially reducing her potential prison exposure. She received a two-level reduction in her recommended guideline sentence for acceptance of responsibility, and a one level reduction for timely notifying authorities of her intention to plead guilty. *PreSentence Investigation Report* at ¶¶36, 37. Additionally, the government agreed not to pursue any additional charges based on activities charged in the indictment. *Plea Agreement,* at 3. The government also agreed to file a motion pursuant to U.S.S.G. §5K1.1 or Rule 35 of the Federal Rules of Criminal Procedure at a later date if petitioner provided substantial assistance to the government. *See id.*, at 6. The Court sentenced petitioner to 60 months, although her recommended guideline sentence was 77 to 96 months incarceration. *See PreSentence Investigation Report*, at ¶96. Additionally, and at counsel's request, the Court ordered her sentence to be served concurrently to the sentence she was serving on state charges. *Sentencing Transcript*, at 4-6.

Petitioner does not indicate the nature of any additional mitigating factors that her attorney should have raised, but did not, that could have further reduced her sentence, nor are any such factors apparent from the record. Likewise, petitioner fails to indicate which portions of the PreSentence Investigation Report her attorney should have disputed, but did not. In her request for a certificate of appealability, petitioner states that she disputes prior convictions used to assess her criminal history, and alleges that the

> District Judge failed to follow proper guideline procedure needed to accomplish adjusted sentence in light of concurrent terms of confinement according to the applicable subsection of U.S.S.G. 5G1.3(b), (ii) for multiple terms of confinement.

*Request for Certificate of Appealability*, Doc. No. 77. Petitioner appears to be arguing that her attorney should have requested that her federal sentence be decreased under U.S.S.G. §5G1.3(b) for time served on an October 26, 2005, eighteen month state court sentence for taking the identity of another. *See PreSentence Investigation Report*, at ¶97. U.S.S.G. §5G1.3 provides:

> Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment
>
> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
>
> (c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

*Id.* Application Note 2(D) gives an example of how the provision of 5G1.3(b) is applied:

> (D) Example.--The following is an example in which subsection (b) applies and an adjustment to the sentence is appropriate:
>
> The defendant is convicted of a federal offense charging the sale of 40 grams of cocaine. Under § 1B1.3, the defendant is held accountable for the sale of an additional 15 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court. The defendant received a nine-month sentence of imprisonment for the state offense and has served six months on that sentence at the time of sentencing on the instant federal offense. The guideline range applicable to the defendant is 12-18 months (Chapter Two offense level of level 16 for sale of 55 grams of cocaine; 3 level reduction for acceptance of responsibility; final offense level of level 13; Criminal History Category I). The court determines that a sentence of 13 months provides the appropriate total punishment. Because the defendant has already served six months on the related state charge as of the date of sentencing on the instant federal offense, a sentence of seven months, imposed to run concurrently with the three months remaining on the defendant's state sentence, achieves this result.

*Id.* However, U.S.S.G. §5G1.3(b) is inapplicable to petitioner's case because the state court conviction she refers to, *i.e.*, her conviction on taking the identity of another, was unrelated to the charges in the instant case and did not increase or otherwise contribute to the calculation of

10

petitioner's offense level. *See United States v. Campbell*, 309 F.3d 928, 930 (6th Cir. 2002); *United States v. Lawson*, 266 F.3d 462, 466-67 (6th Cir. 2001); *PreSentence Investigation Report*, ¶55:

> Wise was charged with Receiving Stolen Property, Forgery (two counts), and Identity Theft. She was found in possession of credit cards belonging to Amy Weir. She utilized this credit card and charged purchases worth more than $500 but less than $5,000.

*PreSentence Investigation Report*, ¶55. As noted, the District Court ordered petitioner's sentence to be served concurrently to the sentence she was serving on state charges. *Sentencing Transcript*, at 4-6. Although she complains that her recommended guideline sentence may have been reduced on the implied threat of violence had she been sentenced on the same date as her co-defendant, the record does not indicate that her sentence was enhanced for any implied threat of violence. Finally, to the extent that petitioner asserts that she was denied the effective assistance of counsel because her attorney failed to request the District Court to award her credit on her federal sentence for time already served on state charges, this claim likewise fails.

> 18 U.S.C. §3585(b) provides:
>
> > A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
> >
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> >
> > that has not been credited against another sentence.

18 U.S.C. § 3585(b). A District Court cannot apply this statute at sentencing.

> [T]he Attorney General must ... compute the credit under § 3585(b)

> as he did under the former § 3568....
>
> After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence. See 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed"). To fulfill this duty, the BOP must know how much of the sentence the offender has left to serve. Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant.
>
> \*\*\*
>
> Federal regulations have afforded prisoners administrative review of the computation of their credits, *see* 28 CFR §§ 542.10-542.16 (1990); *Lucas, supra,* at 1556, and prisoners have been able to seek judicial review of these computations after exhausting their administrative remedies, *see United States v. Bayless,* 940 F.2d 300, 304-305 (CA8 1991); *United States v. Flanagan,* 868 F.2d 1544, 1546 (CA11 1989); *United States v. Martinez,* 837 F.2d 861, 865-866 (CA9 1988).

*United States v. Wilson*, 503 U.S. 329, 333-35 (1992).

For all of the foregoing reasons, petitioner has failed to establish the ineffective assistance of counsel.

## DENIAL OF ACCESS TO LAW LIBRARY

In claim four, petitioner asserts that she had no access to a law library or ability to consult legal material at the Franklin County Jail, where she was incarcerated pending trial.  This claim likewise fails.

> [A] prisoner's constitutionally-guaranteed right of access to the courts has been protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, or the assistance of legally-trained personnel.

*Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983), citing *Bounds v. Smith,* 430 U.S. 817 (1977); *Avery v. Johnson,* 393 U.S. 483 (1969).  Additionally, this claim is not one which would justify the vacation of either her conviction or sentence.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.  Petitioner's request for the appointment of counsel, Doc. No. 76, is **DENIED**.  Petitioner's request for a certificate of appealability, Doc. No. 77, likewise is **DENIED**, without prejudice to renewal as premature.  No final judgment has yet been issued in this case.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court

adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

```
                              /s/ Terence P. Kemp
                              United States Magistrate Judge
```